UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AXEL HERNANDEZ,                          )
                          Plaintiff      )
                                         )
                                         )
              v.                         )        Civil Action No. 09-10259-MAP
                                         )
                                         )
MICHAEL J. ASHE, JOHN KENNEY,            )
JUAN RAMOS and JERRY DEVINE,             )
                          Defendants     )

REPORT AND RECOMMENDATION REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (Document No. 44)
September 22, 2010

NEIMAN, U.S.M.J.

On February 2, 2007, Axel Hernandez ("Plaintiff") was a pretrial detainee at the

Hampshire County Correctional Center ("the HCCC") when he got into an alleged

"altercation" with a correctional officer, Jerry Devine ("Devine"), while Devine was

delivering Plaintiff his lunch.  Proceeding *pro se*, Plaintiff filed a fourteen-count

complaint against the following HCCC officials (together "Defendants") in their

individual and official capacities:  Devine, Deputy Sheriff John Kenney ("Kenney"),

Captain Juan Ramos ("Ramos"), and Sheriff Michael J. Ashe ("Ashe").  In essence,

Plaintiff alleges constitutional claims of excessive force, denial of medical care, and

failures to investigate and supervise, as well as tort claims of assault and battery and

negligence.

Defendants have moved for summary judgment on all claims.  Plaintiff opposes

with regard to his seven claims against Devine, Kenney, and Ramos (Counts I through

VII), but concedes that summary judgment should enter in Sheriff Ashe's favor on the seven counts targeting him (Counts VIII through XIV).  Pursuant to Rule 3 of the Rules of United States Magistrate Judges in the United States District Court of the District of Massachusetts, Defendants' motion for summary judgment has been referred to this court for a report and recommendation.  *See* 28 U.S.C. § 636(b)(1)(B).  For the following reasons, the court will recommend that Defendants' motion be allowed in its entirety.

## I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, a court must construe the facts in a light most favorable to the non-moving party.  *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law.  *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994).  The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact.  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## II. BACKGROUND

The following background is taken principally from Defendants' Local Rule 56.1 Concise Statement of Undisputed Material Facts (Doc. No. 46, hereinafter "Defs.'

Facts") and Plaintiff's response to that statement (Doc. No. 58, hereinafter "Pl.'s

Facts").  *See* Rule 56.1, Local Rules of the United States District Court for the District

of Massachusetts.  The facts are set forth in a light most favorable to Plaintiff.

A.  Undisputed Facts

    The following facts are undisputed.  On September 22, 2005, Plaintiff entered

the HCCC as a pretrial detainee.  (Defs.' Facts ¶¶ 1,2.  See also Amended Verified

Complaint (Doc. No. 9, hereinafter "Compl.").)  In February of 2007, Plaintiff inhabited a

second-floor cell in a segregated pod where inmates are confined to their units for

twenty-three hours per day.  (Defs.' Facts ¶¶ 4, 5.)  Inmates in such confinement

receive meals through a "food pass," *i.e.*, a steel hatch on the cell door large enough to

pass a food tray or for a prisoner to reach an arm outside of the cell.  (*Id.* ¶ 7.)

    On February 2, 2007, upon receiving his noontime meal from Devine, Plaintiff

informed him of a problem.  (*Id.* ¶¶ 6, 8.)  Upon hearing Plaintiff's complaint, Devine left

the area of Plaintiff's cell, the meal delivery cart remained some distance away in the

walkway outside Plaintiff's cell door, and Plaintiff's food pass remained open.  (*Id.* ¶ 9.)

A few minutes later, Plaintiff "fished" the cart to within reach of his cell using a string

and a deodorant container flung through the food pass; Plaintiff then held onto the cart

extending his hand and arm out through the open food pass.  (*Id.* ¶ 10.)  Plaintiff

concedes that these actions, which attracted Devine's attention (*id.*), constituted an

"institutional infraction."  (Pl.'s Opp'n Defs.' Motion Summ. J. (Doc. No. 55, hereinafter

"Pl.'s Brief") at 4.)[1]

Shortly thereafter, Devine returned to the walkway outside of Plaintiff's cell and attempted to move the food cart away, but Plaintiff held on. (*Id.* ¶ 13; Pl.'s Facts ¶ 13.) Devine then used his foot to attempt to break Plaintiff's grip on the food cart, striking twice. (Defs.' Facts ¶¶ 14, 18.) The use of force lasted less than ten seconds. (*Id.* ¶ 20.) On the second strike, Plaintiff released his grip from the cart. (*Id.* ¶ 18.) Devine then closed the hatch on the food pass and left the walkway outside Plaintiff's cell. (*Id.* ¶ 23.)

At approximately 3:45 p.m. the same day, Plaintiff pulled a sprinkler head in his cell, causing it to be flooded with water and requiring his removal from the cell by a Special Operations team. (*Id.* ¶ 27.) Plaintiff then reported an injury to his left hand to one of the responding officers and requested to speak to Lt. Joseph Lemoine ("Lemoine"), the on-duty shift supervisor. (*Id.* ¶ 28.)

At about 4:05 p.m., Lemoine spoke to Plaintiff who reported an "altercation" with Devine. (*Id.* ¶ 29.) Lemoine noted swelling to Plaintiff's left thumb and had him taken to the Health Services Department for treatment. (*Id.* ¶ 31.) There, medical staff diagnosed Plaintiff with an injury to his left thumb, splinted the thumb, ordered x-rays, and prescribed a five-day supply of Motrin. (*Id.* ¶¶ 34, 35.) X-ray images were taken on February 6, 2007; the results were negative. (*Id.* ¶ 37.) Within a few days,

---

[1] In his affidavit, Devine described the serious security concerns that may arise from an open hatch, *e.g.*, an inmate might "us[e] the cart to pass contraband [or] injure someone." (Defs.' Facts, Ex. 6 ¶¶ 11-15.) Indeed, Devine himself had previously been confronted "by an agitated inmate who threw . . . feces and urine at [him] through an open food pass." (*Id.* ¶ 16.)

Plaintiff's hand appeared normal.  (*Id.* ¶ 38.)

Plaintiff sought no further treatment for the injury and reported no related problems at a physical on February 21, 2007.  (*Id.* ¶¶ 39-42.)  Plaintiff also had several meetings with mental health staff between February and August of 2007, but made no mention of the incident or any negative psychological effects therefrom.  (*Id.* ¶¶ 43-49.) Plaintiff has sought no mental health treatment related to the incident.  (*Id.* ¶ 71.)

For their part, Kenney and Ramos began investigating the incident as soon as Plaintiff reported it on February 2, 2007.  (*Id.* ¶ 59.)  As part of their investigation, they viewed video footage of the incident (which has been entered as part of the record and viewed by the court) and interviewed both Plaintiff and Devine.  (*Id.* ¶¶ 61, 62.)  They determined that Plaintiff had probably inflicted the thumb injury upon himself after the interaction with Devine.  (*Id.* ¶¶ 61-63, 67.)  Concluding that there was a minimal use of force by Devine, a minor injury to Plaintiff's thumb, and doubt as to whether Devine's force actually caused the injury, Kenney and Ramos closed the file.  (*Id.* ¶¶ 65-67.)

Six months later, on August 5, 2007, Plaintiff filed a grievance about the incident which he addressed to Ramos.  (*Id.* ¶ 51.)  Ramos responded on August 17, 2007, informing Plaintiff that "[a]ppropriate action has been exercised in this matter" and instructing Plaintiff to refer further inquiry to his attorney.  (*Id.* ¶ 53.)

Meanwhile on August 9, 2007, Plaintiff filed a second grievance -- this one addressed to Assistant Superintendent Thomas Rovelli ("Rovelli") -- in which he asserted that Kenney had not conducted a satisfactory investigation.  (*Id.* ¶ 54.)  On August 22, 2007, Rovelli responded, assuring Plaintiff that the matter had been

investigated and all appropriate action had been taken.  (*Id.* ¶ 55.)

Plaintiff also filed another grievance on August 9th, this one addressed to the Director of Health Services, Brian Liebel ("Liebel").  (*Id.* ¶ 56.)  Plaintiff claimed therein that his civil rights had been violated as a result of insufficient medical care for his "broken" thumb. (*Id.* ¶ 56.)  Liebel's response of August 10, 2007, stated that treatment had been appropriate and that Plaintiff's thumb had not, in fact, been broken.  (*Id.* ¶ 57.)

B.  Plaintiffs' Additional Facts

In his submissions, Plaintiff makes several additional factual allegations.  Even though these assertions do not precisely conform to the summary judgment rules, the court, given Plaintiff's *pro se* status, will nonetheless summarize Plaintiff's additional "facts."  *See Raineri v. United States*, 233 F.3d 96, 97 (1st Cir. 2000) ("The federal courts historically have been solicitous of the rights of pro se litigants.") (citing, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

Plaintiff asserts that Devine became verbally abusive, kicked him without giving him time to remove his hand from the cart, and then slammed his hand in the food pass hatch.  (Pl.'s Facts ¶¶ 12, 14.)  Plaintiff further alleges in his complaint that Devine, knowing that Plaintiff was injured, refused to contact the shift supervisor or the medical department.  (Compl. ¶ 16.)  And in his brief, Plaintiff claims that he was "forced" to pull the sprinkler head in order to gain an opportunity to report his injury.  (See Pl.'s Brief at 9.)  He also alleges continuing pain and loss of function to his left hand lasting at least through the date of his complaint June 1, 2009.  (Compl. ¶ 24.)  Further, although not

mentioned elsewhere, Plaintiff claims in his brief that he has been damaged psychologically.  (See Pl.'s Brief at 2.)

Plaintiff alleges as well that he filed other, earlier, grievances in addition to those cited in the undisputed facts, but he provides no details.  (Compl. ¶¶ 9,32, 34.)  He also asserts that he was dissuaded from filing charges against Devine because he believed Ramos and Kenney were adequately handling the matter and had a duty as law-enforcement officers to file charges against Devine themselves.  (*Id.* ¶ 8; Pl.'s Brief ¶ 12.)  Again, however, Plaintiff provides no details regarding this assertion.

C.  Procedural Background

The complaint contains fourteen counts.  The first three, against Devine, allege excessive use of force in violation of Plaintiff's Fifth and Fourteenth Amendment rights (Count I), failure to provide adequate medical care, again in violation of the Fifth and Fourteenth Amendments (Count II), and the tort of assault and battery (Count III). Counts IV and VI charge Kenney and Ramos, respectively, with "failing to properly investigate" the excessive force claim in violation of the Fifth and Fourteenth Amendments.  Counts V and VII charge Kenney and Ramos, respectively, with the tort of negligence for the same alleged failure, and Count VII also includes a claim that Kenney failed to properly supervise Ramos's investigation.  As indicated, Counts VIII through XIV, against Ashe, have all been dropped at Plaintiff's request.[2]

---

[2] Those counts included claims that Ashe failed to properly supervise Kenney and Ramos, permitted the use of excessive force upon Plaintiff, condoned a general practice of excessive force at the HCCC, violated Plaintiff's Fifth and Fourteenth Amendment rights, and committed both negligence and negligent supervision.

III. DISCUSSION

Following Defendants' lead, the court considers the remaining seven causes of action essentially in the order they appear in Plaintiff's complaint. In the end, the court believes that none of these claims present any triable issues and, hence, that Defendants are entitled to summary judgment with respect to each. As a result, the court does not reach Defendants' alternative qualified immunity argument.

A. Excessive Use of Force (Count I)

Count I alleges that Devine is liable under the Fourteenth Amendment's Due Process Clause for an excessive use of force. The court, however, believes that Devine is entitled to summary judgment on Count I and will so recommend.

Before analyzing Count I -- and Plaintiff's other causes of action which flow from it -- the court makes two preliminary points. First, as the parties appear to agree, 28 U.S.C. § 1983 provides the statutory basis for Plaintiff's constitutional claims. *See Construction Aggregates Corp. v. Rivera de Vicenty*, 573 F.2d 86, 94 n.6 (1st Cir. 1978) ("§ 1983 generally is thought of as a vehicle for the assertion of constitutionally protected rights against state officials"). Second, because Plaintiff was a pretrial detainee, Count I and his other constitutional claims are governed by the Fourteenth Amendment rather than by the Eighth Amendment. *See Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir. 2007); *Surprenant v. Rivas*, 424 F.3d 5, 18 (1st Cir. 2005). Even so, the parties have cited cases applying the Eighth Amendment's protections against cruel and unusual punishments, appropriately so, since those protections are essentially coextensive with those afforded by the Fourteenth Amendment. *See Whitley v. Albers*,

8

475 U.S. 312, 327 (1986) ("[I]n these circumstances the Due Process Clause affords

respondent no greater protection than does the Cruel and Unusual Punishments

Clause."); *Ruiz-Rosa*, 485 F.3d at 155 (similar).[3]

As the First Circuit has observed, the framework for analyzing an excessive

force claim has been established by the Supreme Court in *Whitley* and *Hudson v.*

*McMillian*, 503 U.S. 1 (1992).  *Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir.

2005).  "Generally speaking, '[a]fter incarceration, only the unnecessary and wanton

infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth

---

[3]  Although the First Circuit's decision in *Ruiz-Rosa* was not an "excessive force" case, other circuits have unanimously applied Eighth Amendment standards to Fourteenth Amendment excessive force claims brought by pretrial detainees. *See, e.g.*, *Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir. 2000) ("[W]e hold that the Eighth Amendment cruel and unusual punishments standards . . . apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance."); *Henderson v. Sheahan*, 196 F.3d 839, 845 n. 2 (7th Cir. 1999) ("Whether [the plaintiff's] present injury claim is analyzed under the Eighth or Fourteenth Amendment ultimately makes no practical difference to our resolution of his challenge on appeal because we already have held that § 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test."); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment . . . . Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards."); *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) ("Pretrial detainees  are protected under the Due Process Clause rather than the Eighth Amendment . . . .  In determining whether appellant's rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners . . . .  However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.").  Neither party suggests an alternative standard here.

Amendment.'" *Id.* (quoting *Whitley*, 475 U.S. at 319) (further internal quotation marks omitted)).  "The critical question in such a case," the First Circuit continued, "is whether the force was applied 'maliciously and sadistically for the very purpose of causing harm,' [*Whitley*] at 320-21, rather than 'in a good-faith effort to maintain or restore discipline,' *Hudson*, 503 U.S. at 7."  *Id.*

Whether the use of force is wanton and unnecessary depends on the context and is "responsive to 'contemporary standards of decency.'"  *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Courts, however, may also consider the following factors:  "the extent of injury suffered by an inmate . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).  "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id.* at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").  Rather, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10 (internal quotation omitted).

Here, Defendants argue that Devine's use of force was *de minimis*.  After reviewing both the caselaw Defendants cite (and other decisions) as well as the

undisputed facts, the court agrees.  For example, the First Circuit has found the

throwing of a radio belt by a prison guard to be *de minimis*, even though the act inflicted

a bloody lip on an inmate, was purposeful and lacked penal justification.  *See Calabria*

*v. Dubois*, 23 F.3d 394, 1994 WL 209938, *2 (1st Cir. May 24, 1994) (unpublished).

Other "*de minimis*" decisions from outside the First Circuit present uses of force

arguably similar to that in the present case, including some cited by the First Circuit in

*Calabria*.  *See*, *e.g.*, *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (spraying

with fire extinguisher); *Olson v. Coleman*, 804 F. Supp. 148, 150 (D. Kan. 1992) (single

blow to head while handcuffed), *aff'd*, 1993 U.S. App. LEXIS 10086 (10th Cir. 1993);

*Gabai v. Jacoby*, 800 F. Supp. 1149, 1154-55 (S.D.N.Y. 1992) (shoved into chair);

*Candelaria v. Coughlin*, 787 F. Supp. 368, 374-75 (S.D.N.Y.) (fist pushed against neck),

*aff'd*, 979 F.2d 845 (2d Cir. 1992). *See also Jackson v. Pitcher*, 966 F.2d 1452, 1992

WL 133041 (6th Cir. June 16, 1992) (unpublished) (prison guard stomping on inmate's

hand to prevent him picking up a cigarette deemed *de minimis*); *DeArmas v. Jaycox*,

1993 WL 37501 (S.D.N.Y. Feb. 8, 1993) (corrections officer punching inmate in the arm

and kicking him in the leg caused no visible injury and deemed *de minimis*), *aff'd*, 14

F.3d 591 (2d Cir. 1993).

To be sure, Plaintiff now claims continuing pain in his hand as well as

psychological trauma from the event.  Neither of these claims, however, enjoys any

support in the medical record.  Yet even were the court to accept the truth of these

additional allegations, Plaintiff's injuries remain constitutionally insignificant, as the

above decisions confirm.  It is undisputed that Plaintiff's thumb was not broken, his

hand appeared normal within a few days, x-rays were negative, and Plaintiff sought no further treatment, whether medical or psychological, for his alleged injury.  Thus, despite Plaintiff's present claim of a lasting injury, the court agrees with Defendants that the force used in this case was *de minimis*, *i.e.*, too minor to rise to the level of a constitutional cause of action.

Even assuming that the use of force here was not *de minimis*, Defendants' motion for summary judgment on the excessive use of force claim, in the court's view, should still be granted as the record presents no evidence whatsoever of malicious intent.  Granted, Plaintiff *believes* that Devine acted with a culpable state of mind, but he supports that belief only with his own subjective characterizations, *i.e.*, that Devine maliciously "slammed" his hand in the food pass hatch and used language that was "verbally abusive."  *See Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 471 n.6 (1st Cir. 2010) ("unsupported speculation . . . is insufficient to forestall summary judgment") (citation and internal quotation marks omitted).  More importantly perhaps, Plaintiff's assertions are flatly contradicted by the video record of the event, a video that Plaintiff himself urged the court to review.  (See, *e.g.*, Pl.'s Facts ¶¶ 19, 20, 59, 65, 66; Pl.'s Brief at 7.)

As the Supreme Court has directed, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Furthermore, the court explained, "[w]hen the moving party has carried its burden under

Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' "  *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

That is the precise situation here.  Plaintiff has failed to provide any evidence that Devine's actions were unjustified or otherwise malicious and has, therefore, raised no genuine issue for trial. As noted, Devine's actions were in direct response to a disturbance Plaintiff created when he "fished" the food cart, Plaintiff has acknowledged that his actions were in violation of prison rules, and Plaintiff's control of the metal cart undoubtedly presented a dangerous situation for anyone who may have passed on the walkway, the stairs, or the floor below.  Moreover, the video clearly and unequivocally shows that Devine attempted to move the cart before using his foot to force Plaintiff to release it, only applied force when Plaintiff failed to let go, used only the force necessary to remove Plaintiff's hand from the cart, and closed the food pass hatch in a smooth and unobstructed movement without excessive speed or force, thereby quickly resolving the disturbance.

At bottom, even viewing the facts in the light most favorable to Plaintiff, the instant situation reveals a use of force "applied in a good-faith effort to maintain or restore discipline," *Hudson*, 503 U.S. at 7, and certainly no excessive force constituting any cruel or unusual punishment.  Accordingly, the court has little choice but to recommend that Defendants' motion for summary judgment with respect to Count I be

allowed.

B.  Denial of Adequate Medical Care (Count II)

In Count II, Plaintiff asserts that Devine denied him adequate medical care after the incident.  To resolve this claim, the court again looks to the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Ruiz-Rosa*, 485 F.3d at 155; *Burrell v. Hampshire County*, 307 F.3d 1, 7 (1st Cir. 2002)).  Accordingly, Plaintiff "must prove that [Devine's] actions amounted to deliberate indifference to a serious medical need."  *Braga v. Hodgson*, 605 F.3d 58, 61 (1st Cir. 2010) (citing, *inter alia*, *Estelle*, 429 U.S. at 106) (internal quotation marks omitted).  The court concludes that Plaintiff cannot make that showing.

A primary factor in determining whether a medical need is serious is the effect of denial of treatment.  *See Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  *See also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (a serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain").  Here, however, Plaintiff does not claim -- and the record does not show -- that the delay in treatment to the concededly minor injury to Plaintiff's thumb caused any exacerbation.  Rather, the undisputed facts reveal that Plaintiff received medical attention a mere four hours after the incident, that he was initially diagnosed with only a swollen thumb, that x-rays taken within a few days revealed no fracture, and that Plaintiff reported no further problems at his physical a few weeks later.  *See also*

*Gaudreault*, 923 F.2d at 208 (multiple bruises to the forehead, left and right orbits of his eyes, nasal area, left ribs, right flank and left shoulder, corneal abrasion, and an abrasion on the upper back did not amount to "serious medical needs"); *Jesionowski v. Beck*, 937 F. Supp. 95, (D. Mass. 1996) (forehead laceration causing profuse bleeding was not a serious medical need).  The court, therefore, will recommend that Defendants' motion with respect to Count II be allowed.

C.  Assault and Battery (Count III)

Under Massachusetts law, "an assault and battery is 'the intentional and unjustified use of force upon the person of another, however slight.'"  *Thore v. Howe*, 466 F.3d 173, 176 (1st Cir. 2006) (quoting *Commonwealth v. Burno*, 487 N.E.2d 1366, 1368-69 (Mass. 1986) (further citation omitted)).  In the prison context, however, the standards for determining an assault and battery by a guard are essentially the same as the standards for determining an excessive force claim.  *See Goddard v. Kelley*, 629 F. Supp. 2d 115, 129 (D. Mass. 2009); *Evicci v. Baker*, 190 F. Supp. 2d 233, 239 (D. Mass. 2002) (citing *Am. Jur. 2d, Assault and Battery* § 105).  *Cf. Matthews v. Cordeiro*, 256 Fed. Appx. 373, 2007 WL 4304268, at *2 (1st Cir. Dec. 11, 2007) (no error by district court in refusing to give additional and separate assault and battery instruction in prisoner's civil rights trial alleging excessive force by guards).  Since the court believes that Plaintiff's excessive force claim against Devine fails, it will recommend that Defendants' motion for summary judgment with respect to Plaintiff's assault and battery claim (Count III) be allowed as well.

D.  Failure to Investigate as a Breach of Constitutional Rights (Counts IV and VI)

15

In Counts IV and VI, Plaintiff asserts that Kenney and Ramos failed to sufficiently investigate the incident and that such failures violated his Fifth and Fourteenth Amendment rights.  The court disagrees.

Plaintiff appears to be claiming that the alleged failures deprived him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  To succeed on such a claim, however, Plaintiff "must demonstrate both that he was deprived of a protected interest and that the deprivation lacked the requisite due process." *Evicci*, 190 F. Supp. 2d at 240 (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  Additionally, "[t]he courts of appeals that have confronted the issue are in agreement that the existence of a prison grievance procedure confers no liberty interest on a prisoner."  *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases from the Fourth, Eighth, Seventh and Ninth Circuits).  *See also Burnside v. Moser*, 138 Fed. Appx. 414, 415, 2005 WL 1532429 (3d Cir. June 30, 2005).

Plaintiff has not stated a specific deprivation of a protected interest and no such deprivation appears to exist on the facts of this case.  Furthermore, even if a failure to properly investigate the matter constituted a violation of Plaintiff's due process rights, he has failed to show any evidence of insufficiency in the investigation conducted by Kenney or Ramos.  Rather, the undisputed facts reveal that Kenney and Ramos promptly interviewed Plaintiff and Devine, viewed the video, and determined that the altercation resulted in only minimal injury.  In addition, Plaintiff's awareness of proper grievance procedures for such problems and his decision to create a potentially dangerous situation by "fishing" the cart, rather than availing himself of that procedure,

undercut his claims.  Finally, there is absolutely no evidence that either Kenney or

Ramos "obstructed" Plaintiff's ability to bring charges against Devine or should have

brought such charges themselves.  Accordingly, the court will recommend the

Defendants' motion with respect to Counts IV and VI also be allowed.

E.  Failure to Investigate (or Supervise) as Negligence (Counts V and VII)

On essentially the same facts as Counts IV and VI, Plaintiff asserts in Counts V

and VII that Kenney and Ramos are liable for negligence.  "To prevail in a negligence

action under Massachusetts law, a plaintiff must prove that (1) the defendant owed the

plaintiff a duty of reasonable care; (2) the defendant breached this duty; (3) damage to

the plaintiff resulted; and (4) the breach of the duty caused this damage."  *Brown v.*

*United States*, 557 F.3d 1, 3 (1st Cir. 2009).  *Accord Brush v. Jiminy Peak Mtn. Resort,*

*Inc.*, 626 F. Supp. 2d 139, 147 (D. Mass. 2009).

For the reasons just stated, there is no evidence that either Kenney or Ramos

breached any duty they may have owed Plaintiff to investigate or supervise.  In

addition, there is no evidence of any damages resulting from their actions.

Accordingly, the court will recommend that Defendants' motion with respect to Counts V

and VII -- and hence the entirety of Defendants' motion for summary judgment -- be

allowed.

IV. CONCLUSION

For the foregoing reasons, the court recommends that Defendants' motion for

summary judgment be ALLOWED.[4]

DATED: September 22, 2010

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[4] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.